IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

NICK A. LAI,

                Plaintiff,

    v.

RADNOR TOWNSHIP POLICE DEPT., et al.,

                Defendants.

CIVIL ACTION
NO. 15-2451

## OPINION

**Slomsky, J.**                                             **July 11, 2016**

## I.    INTRODUCTION

Plaintiff Nick A. Lai, proceeding pro se, brings this suit against Defendants Radnor Township Police Department, Superintendent of Police William Colarulo, Lieutenant Andrew Block, Sergeant Mark Stiansen, Officer Steven Bannar, Officer Patrick Lacey, and Sergeant Joseph Maguire (collectively, "Defendants") for alleged violations of Title VII of the Civil Rights Act of 1964 ("Title VII") and the National Labor Relations Act of 1935 ("NLRA").[1]

In Count I of the Third Amended Complaint ("TAC"), Plaintiff alleges that Defendants discriminated against him based on his race and national origin in violation of Title VII. In Count II, Plaintiff alleges that Defendants created a hostile work environment also in violation of Title VII. In Count III, Plaintiff asserts unfair labor practices in violation of the NLRA. Finally, in Count IV, Plaintiff alleges that Defendants retaliated against him based on his race and

---

[1] Title VII is codified at 42 U.S.C. § 2000e, et seq., and the NLRA is codified at 29 U.S.C. § 158, et seq.

national origin in violation of Title VII.  (Doc. No. 22.)  Defendants have filed a Motion to Dismiss the TAC in its entirety.  (Doc. No. 24.)  The Motion is now ripe for disposition.[2]

## II.   BACKGROUND[3]

In May 2013, the Radnor Township Police Department ("Radnor PD") hired Plaintiff, a man of Asian descent, as a Probationary Police Officer.  (Doc. No. 22 ¶¶ 16-17.)  Plaintiff had previously worked for the Philadelphia Police Department for approximately eighteen years.  (Id. ¶ 30.)  During Plaintiff's tenure at the Philadelphia Police Department, he received only positive evaluations and was not the subject of any disciplinary action.  (Id. ¶ 35.)  After Radnor PD hired Plaintiff, he was assigned to train with Officer Bannar and Sergeant Stiansen.  (Id. ¶ 17.)

Shortly after Plaintiff was hired, he witnessed Sergeant Stiansen and other Radnor Police Officers engaging in what Plaintiff refers to as "racial profiling."  (Id. ¶ 18.)  Subsequently, while on patrol with Officer Bannar, Plaintiff reported the racial profiling to Officer Bannar.  (Id.)  Officer Bannar ignored Plaintiff's concern.  (Id. ¶ 20.)  One week later, Plaintiff and Officer Bannar were dispatched to assist a person with a locked vehicle.  (Id. at ¶ 22.)  Both Plaintiff and Officer Bannar noticed several pill bottles inside the person's car with no prescription labels.  (Id.)  The pills were confiscated, but no property receipt was prepared, and the driver of the vehicle, who was Caucasian, was released without arrest.  (Id. ¶¶ 22-23.)  Plaintiff expressed concern about the improper handling of narcotics, but Officer Bannar ignored his concern.  (Id. ¶ 23.)  According to Plaintiff, his concerns were ignored by Officer Bannar on four occasions.  (Id.)

---

[2] In reaching a decision, the Court has considered the TAC (Doc. No. 22), the Motion to Dismiss the TAC (Doc. No. 24), and Plaintiff's Response in Opposition (Doc. No. 26).

[3] When analyzing the sufficiency of pro se Complaints, courts in this Circuit must liberally construe the pleadings.  Higgins v. Beyer, 293 F.3d 683, 688 (3d Cir. 2002).  The following facts are taken from the TAC and are accepted as true for purposes of the Motion to Dismiss.

During his employment, Radnor Police Officers also subjected Plaintiff to negative treatment. During two separate and unrelated conversations in the computer room at Radnor PD, Officer Bannar and Sergeant Stiansen both said to Plaintiff, "If you don't like it here you can go back where you came from." (Id. ¶ 27.)  Another time, Officer Lacey "outwardly and publicly belittle[d] and embarrass[ed]" Plaintiff after Plaintiff asked whether there was a "community relations officer" at the Radnor PD. (Id. ¶ 29.)

Plaintiff alleges that on various occasions, he was derided "for his speech, made fun of for the jobs women in his culture engage in," and was the subject of jokes regarding his culture. (Id. ¶ 41.)  Plaintiff alleged that during a twelve-hour training session with Officer Bannar, Bannar "made remarks about Chinatown massage parlors after he received a personal call from [an] unknown female." (Id. at 17.)  According to Plaintiff, Officer Bannar made a comment about the caller working in a massage parlor and said, "I want to go [to] Chinatown massage parlors to get a happy ending." (Id.)  Plaintiff considered this a racist comment. (Id.)  Plaintiff states that his coworkers generally would "talk, laugh, and constantly point in his direction." (Id. ¶ 41.)

Plaintiff further alleges that he informed both Officer Bannar (his superior officer), and Sergeant Stiansen of various "incidents and inappropriate acts of but not limited to racial profiling." (Id. ¶ 32.)  Instead of addressing his concerns, Plaintiff alleges that Defendants made it impossible for him to complete his work, causing him to become "broken to the point of being forced to resign." (Id.)  Specifically, Sergeant Maguire began to ignore Plaintiff during roll call, which precluded Plaintiff from accessing an overtime sheet that was being passed from officer to officer. (Id. ¶ 33.)  Additionally, Plaintiff was instructed to drive a "patrol sector"[4] for twelve

---

[4] In the TAC, Plaintiff does not explain or define "patrol sector."

hours without a break.  (Id.)  Plaintiff's fellow officers did not assist him.  (Id.)  Plaintiff alleges that he began to receive negative performance reports, which included false statements about him.  (Id.)  As a result, he suffered serious mental stress.  (Id. ¶ 34.)  Ultimately, he was forced to resign from the Radnor PD.  (Id. ¶ 38.)

On May 4, 2015, Plaintiff initiated this action pro se after exhausting his administrative remedies under Title VII.  (Doc. No. 1.)  He filed an Amended Complaint on May 26, 2015.  (Doc. No. 2.)  On June 17, 2015, Defendants filed a Motion to Dismiss the Amended Complaint (Doc. No. 12).  The Court held a hearing on Defendants' Motion to Dismiss on September 16, 2015.  Prior to the hearing, Plaintiff filed a Motion for Leave to File an Amended Complaint (Doc. No. 15), and he presented the Second Amended Complaint at the hearing.  Following the hearing, the Court granted Plaintiff's Motion (Doc. No. 15), ordered that the Second Amended Complaint be filed of record, and granted Plaintiff leave to file a Third Amended Complaint.  (Doc. No. 19.)  Upon the filing of the TAC on October 7, 2015 (Doc. No. 22), the Court denied Defendants' pending Motion to Dismiss without prejudice as moot.  (Doc. No. 23.)  On October 27, 2015, Defendants filed a Motion to Dismiss the TAC.  (Doc. No. 24.)  Plaintiff filed a Response in Opposition on December 22, 2015.  (Doc. No. 26.)

## III.   STANDARD OF REVIEW

The motion to dismiss standard under Federal Rule of Civil Procedure 12(b)(6) is set forth in Ashcroft v. Iqbal, 556 U.S. 662 (2009).  After Iqbal it is clear that "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice" to defeat a Rule 12(b)(6) motion to dismiss.  Id. at 663; see also Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  Ethypharm S.A. France v. Abbott Labs., 707 F.3d 223, n.14 (3d Cir. 2013) (citing Sheridan v. NGK Metals Corp.,

609 F.3d 239, n.27 (3d Cir. 2010)).   "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."   Id.   Applying the principles of Iqbal and Twombly, the Third Circuit in Santiago v. Warminster Twp., 629 F.3d 121 (3d Cir. 2010), set forth a three-part analysis that a district court in this Circuit must conduct in evaluating whether allegations in a complaint survive a 12(b)(6) motion to dismiss:

> First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim."   Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth."   Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."

Id. at 130 (quoting Iqbal, 556 U.S. at 675, 679).   "This means that our inquiry is normally broken into three parts: (1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged."   Malleus v. George, 641 F.3d 560, 563 (3d Cir. 2011).

When determining a motion to dismiss, the court must "accept all factual allegations in the complaint as true and view them in the light most favorable to the plaintiff."   Buck v. Hampton Twp. Sch. Dist., 452 F.3d 256, 260 (3d Cir. 2006).   Where, as here, the complaint is filed pro se, the "complaint, 'however inartfully pleaded' must be held to 'less stringent standards than formal pleadings drafted by lawyers.'"   Fatone v. Latini, 780 F.3d 184, 193 (3d Cir. 2015) (quoting Haines v. Kerner, 404 U.S. 519, 520–21 (1972)).   It should be dismissed only if it appears "beyond doubt that the plaintiff can prove no set of facts in support of [his] claim that would entitle [him] to relief."   Olaniyi v. Alexa Cab Co., 239 Fed. Appx. 698, 699 (3d Cir. 2007) (citing McDowell v. Del. State Police, 88 F.3d 188, 189 (3d Cir. 1996)).

IV.    ANALYSIS

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendants seek to dismiss the TAC in its entirety.  (Doc. No. 24.)  The Court will address each of Plaintiff's claims in turn.

### A. Plaintiff Has Plausibly Alleged a Claim of Racial Discrimination

In Count I of the TAC, Plaintiff alleges that Defendants discriminated against him in violation of Title VII.  Title VII makes it unlawful for an employer to "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, . . . or national origin."  42 U.S.C. § 2000e-2(a)(1) (2012).  In the absence of direct evidence of discrimination,[5] a plaintiff alleging intentional discrimination may establish a prima facie case of discrimination under the McDonnell Douglas framework.  Rodriguez v. Nat'l R.R. Passenger Corp., 532 F. App'x 152, 152 (3d Cir. 2013) (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973)).  To make out a prima facie case, Plaintiff must show that he: "(1) is a member of a protected class; (2) was qualified for the position; (3) suffered an adverse employment action; and (4) the adverse employment action was made under circumstances that give rise to an inference of unlawful discrimination." Id.  Defendants do not contest that Plaintiff is a member of a protected class.  Accordingly, this discussion will focus on the second, third, and fourth elements of the prima facie case analysis.

With regard to the second element—whether Plaintiff was qualified for the position—Defendants argue that the Complaint "is silent with respect to any reference to Plaintiff's actual

---

[5] A plaintiff seeking to use direct evidence to show discrimination "faces a high hurdle," and "[d]erogatory comments or stray remarks in the workplace that are unrelated to employment decisions, even when uttered by decision makers, do not constitute direct evidence of discrimination." Tingley-Kelley v. Tr. of Univ. of Pa., 677 F. Supp. 2d 764, 776 (E.D. Pa. 2010) (quotation omitted); see also Villanueva v. Christiana Care Health Servs., Inc., No. CIV. A. 04-258-JJF, 2007 WL 188111, at *4 (D. Del. Jan. 23, 2007) ("While Ms. Collins' remarks may have been insensitive and rude, the Court cannot conclude that they are direct evidence of discrimination.").  Based on the facts in the TAC, the Court cannot conclude that Plaintiff has shown direct evidence of discrimination.

skills and abilities or, conversely, the skills and abilities required of someone serving as a Probationary Police Officer." (Doc. No. 24 at 7.)  Plaintiff alleges, however, that he had worked for the Philadelphia Police Department for over eighteen years with positive evaluations and no disciplinary actions against him. (Doc. No. 22 ¶ 35.)  The inference arises that Plaintiff was hired by the Radnor PD based on his positive employment history.  (Id. ¶ 38).  Using an objective standard, being hired and having the necessary education and experience compel the conclusion that Plaintiff was qualified for the position.  Sempier v. Johnson & Higgins, 45 F.3d 724, 729 (3d Cir. 1995).  Accordingly, Plaintiff has satisfied the second element of a discrimination claim.

As to the third element—whether Plaintiff suffered an adverse employment action—Plaintiff alleges that he was "forced to resign under constructive discharge."  (Id. ¶ 32.)  Defendants argue that Plaintiff "relies exclusively on [the] legal conclusion that he was 'constructively discharged'" and therefore does not satisfy this element.  (Doc. No. 24 at 8.)  Under Title VII, "a plaintiff who voluntarily resigned may maintain a case of constructive discharge when the employer's allegedly discriminatory conduct creates an atmosphere that is the constructive equivalent of a discharge."  Sheridan v. E.I. DuPont de Nemours and Co., 100 F.3d 1061, 1075 (3d Cir. 1996) (citations omitted).  This is an objective test applied "to determine whether 'the employer knowingly permitted conditions of discrimination in employment so intolerable that a reasonable person subject to them would resign.'"  Id. (quoting Aman v. Cort Furniture Rental Corp., 85 F.3d 1074, 1084 (3d Cir. 1996)).

At the motion to dismiss stage, a court must determine whether the facts as pleaded could cause a reasonable jury to find that Plaintiff's continued employment would be intolerable.  See Wiest v. Lynch, 15 F. Supp. 3d 543, 561 (E.D. Pa. 2014) (stating "it is too early, at the motion to dismiss stage," to hold that plaintiff cannot establish constructive discharge based on his

7

subjective "physiological responses" and sudden poor evaluations).   Courts look to various factors in making this determination, including whether: "(1) [Plaintiff] was threatened with discharge; (2) [he] was encouraged to resign; (3) [he] was demoted or suffered a reduction in pay or benefits; (4) [he] was involuntarily transferred to a less desirable position; (5) [his] job responsibilities were altered; and (6) [he] began receiving unsatisfactory job evaluations." Seeney v. Elwyn, Inc., 409 F. App'x 570, 573 (3d Cir. 2011); see also Embrico v. U.S. Steel Corp., 404 F. Supp. 2d 802, 822 (E.D. Pa. 2005) (stating, "Courts have found that a poor performance rating coupled with evidence that the employer has used it to the plaintiff's detriment may be considered an adverse employment action." (quotation omitted)).

Plaintiff has alleged that on two occasions, Officer Bannar and Sergeant Stiansen said to him, "If you don't like it here you can go back where you came from."   (Doc. No. 22 ¶ 27.) Additionally, Plaintiff alleges that on various occasions he was "publicly belittle[d]," derided for the way he spoke, and made fun of for the work in which women in his culture engaged.  (Id. ¶¶ 29, 41.)  Plaintiff states that he informed both Officer Bannar and Sergeant Stiansen of various "incidents and inappropriate acts of but not limited to racial profiling," and nothing was done. (Id. ¶ 32.)  Plaintiff has alleged that he was instructed to drive a "patrol sector" without a break and without help for twelve hours.  (Id. ¶ 33.)  He was also ignored during roll call, which prevented him access to an overtime sheet.  (Id.)   Moreover, during this time, he began to receive poor performance reviews even though he had previously only received positive reviews. (Id. ¶¶ 33, 35.)   Accepting Plaintiff's allegations as true, Plaintiff's resignation may be considered a forced resignation under constructive discharge and therefore an adverse employment action at this stage.

Defendants next argue that Plaintiff has not alleged that the adverse employment action (here, a constructive discharge) occurred because of his membership in a protected class.  Under the fourth element of the prima facie case—whether the adverse employment action was made under circumstances giving rise to an inference of unlawful discrimination—the relevant inquiry is whether discriminatory animus motivated the employer to take the adverse employment action.  Rodriguez, 532 F. App'x at 153 (citing Fuentes v. Perskie, 32 F.3d 759, 765 (3d Cir. 1994)).  "The inquiry into the [fourth] element, proof of a causal link, generally focuses on timing and proof of ongoing antagonism."  Burton v. Pa. Bd. of Prob. & Parole, No. CIV. A.02-2573, 2002 WL 1332808, at *6 (E.D. Pa. June 13, 2002) (citing Woodson v. Scott Paper Co., 109 F.3d 913, 920-21 (3d Cir. 1997)).

Here, Plaintiff has alleged that Defendants' conduct caused him to be "broken to the point of being forced to resign under constructive discharge due to Defendants making it impossible for Plaintiff to complete his task at hand as an officer."  (Id. ¶ 32.)  Plaintiff claims that he told both Officer Bannar and Sergeant Stiansen about various "incidents and inappropriate acts of but not limited to racial profiling."  (Id. ¶ 32.)  Furthermore, Plaintiff alleges that Officer Bannar, Plaintiff's superior officer, made various discriminatory comments toward him.  Though Plaintiff does not specify the temporal relation between Defendants' conduct and his resignation, the Court infers that they were close in time based on Plaintiff's allegation that he became "broken to the point of being forced to resign."  (Doc. No. 22 ¶ 32); see Burton, 2002 WL 1332808, at *6 (declining to dismiss discrimination claims even though "the complaint is not a model of clarity and fails to establish a coherent time-line of alleged misconduct").

Given the above analysis, Plaintiff has alleged facts that show that the discrimination created conditions so intolerable that a reasonable person would resign.  Because Plaintiff has

made out a prima facie case, the Court will not dismiss Plaintiff's Title VII discrimination claim at this stage.

### B. Plaintiff Has Plausibly Alleged a Claim of Hostile Work Environment

Defendants next argue that Plaintiff has not adequately pled a claim for hostile work environment.  Defendants argue that Plaintiff has failed to show that he suffered "intentional discrimination because of membership in a protected class," and, "as the remaining prima facie elements of a hostile work environment claim hinge on [the first element,] those elements cannot be satisfied."  (Doc. No. 24 at 8.)  The Court disagrees.

To successfully assert a hostile work environment claim under Title VII, Plaintiff must demonstrate that: "(1) he suffered intentional discrimination because of his [race]; (2) the discrimination was pervasive and regular; (3) it detrimentally affected him; (4) it would have detrimentally affected a reasonable person of the same protected class in his position; and (5) there is a basis for vicarious liability."  Caver v. City of Trenton, 420 F.3d 243, 262 (3d Cir. 2015) (alterations in original) (quoting Cardenas v. Massey, 269 F.3d 251, 260 (3d Cir. 2001)).

First, Plaintiff has plausibly alleged the first element of the prima facie case, that he suffered intentional discrimination because of his membership in a protected class.  (Doc. No. 24 at 8.)  Title VII "applies to both 'facially neutral mistreatment'" and "overt [ethnic] discrimination" that together create a hostile work environment.  Cardenas, 269 F.3d at 261 (alteration in original) (quotation omitted).  For example, the court in Cardenas held that, considering facially discriminatory comments regarding the plaintiff's ethnicity, management decisions complained of by plaintiff, though facially neutral, provided evidence "from which a jury might find ethnic animus underlying other ostensibly nondiscriminatory incidents."  Id. at 262.

The Third Circuit has "never required a plaintiff to demonstrate direct proof that [his] harasser's intent was to create a discriminatory environment." Abramson v. William Paterson Coll. of N.J., 260 F.3d 265, 278 (3d Cir. 2001).  Instead, "with respect to certain conduct, the intent to discriminate can be inferred."   Id.   Additionally, "because discrimination is 'often simply masked in more subtle forms,' it is often difficult to discern discriminatory animus."  Id. (quoting Aman, 85 F.3d at 1074).

Defendants argue that Plaintiff's Complaint "makes only passing reference[s]" to Plaintiff's "membership in a protected class and, instead, focuses the allegations of mistreatment on reaction[s] to his complaints about supposed racial profiling." (Doc. No. 24 at 8.)  However, the Court must construe the facts in the light most favorable to Plaintiff.  In the TAC, Plaintiff alleges that he was the recipient of many discriminatory comments.  Plaintiff alleges that on two separate occasions, Officer Bannar and Sergeant Stiansen said to Plaintiff, "If you don't like it here you can go back where you came from." (Doc. No. 22 at ¶ 27.)  He also alleges that Officer Lacey "outwardly and publicly belittle[d] and embarrass[ed]" him.  (Id. ¶ 29.)  Plaintiff alleges that he was ridiculed "for his speech, made fun of for the jobs women in his culture engage in," and was the subject of jokes regarding his culture.  (Id. at 41.)  Plaintiff alleges that Officer Bannar made remarks to Plaintiff about wanting to go to a Chinatown massage parlor to "get a happy ending."  (Id.)  Additionally, Sergeant Maguire ignored Plaintiff during roll call, thereby precluding Plaintiff's access to an overtime sheet that was passed from officer to officer during roll call.  (Id. ¶ 33.)  Finally, Plaintiff's fellow officers failed to assist him while on patrol, and Plaintiff began to receive poor performance reports, which he alleges contained false information.  (Id.)

Based on the aforementioned remarks, Plaintiff has sufficiently alleged "overt [ethnic] discrimination." Cardenas, 269 F.3d at 261.  With respect to the alleged conduct, "the intent to discriminate can be inferred." Abramson, 260 F.3d at 278.  The facially neutral conduct, taken together with the discriminatory comments, provides evidence "from which a jury might find ethnic animus underlying other ostensibly nondiscriminatory incidents." Cardenas, 269 F.3d at 262.  Accordingly, Plaintiff has fulfilled the first element of the prima facie case for hostile work environment.

Second, Plaintiff has alleged facts sufficient to prove that the discrimination was pervasive and regular, and altered the conditions of his employment.  To satsify the second element, it is well settled that "a plaintiff must show that his workplace was 'permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" Brooks v. CBS Radio, Inc., 342 F. App'x 771, 776 (3d Cir. 2009) (quoting Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 116 (2002)).  The environment must be objectively hostile. Greer v. Mondelez Global Inc., 590 F. App'x 170, 173 (3d Cir. 2014).

Further, in the Third Circuit, analysis of hostile work environment claims "must concentrate not on individual incidents, but on the overall scenario." Abramson, 260 F.3d at 276 (quotation omitted).  As a result, to determine whether harassment was severe or pervasive, the Court must look at all of the circumstances and consider "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Clark Cnty. Sch. Dist. v. Breeden, 532 U.S. 268, 270-71 (2001) (internal quotation marks omitted).

Here, taking into account the circumstances, the discriminatory conduct Plaintiff alleges created an objectively hostile work environment. Plaintiff was the recipient of frequent discriminatory comments from Radnor Police Officers.[6] Plaintiff alleges that these comments interfered with his work. Beyond the discriminatory comments, Plaintiff alleges that he was ignored during roll call, which precluded him from receiving an overtime sheet that was passed from officer to officer. (Doc. No. 22 ¶ 33.) He also alleges that his fellow officers failed to assist him while on patrol, and he began to receive negative performance reports. (Id.) As a result, Plaintiff suffered mental stress. (Id. ¶ 34.) Accordingly, Plaintiff has sufficiently pled that "the alleged statements that suggest racial animus are objectively hostile acts that altered the 'terms and conditions' of [his] employment." Greer, 590 F. App'x at 174 (quoting Breeden, 532 U.S. at 270). Thus, Plaintiff has sufficiently pled that the discrimination was pervasive and regular.

Third, Plaintiff has sufficiently alleged that the discrimination detrimentally affected him. This element of the prima facie case is a subjective standard, requiring a showing that "the alleged conduct injured this particular plaintiff giving [him] a claim for judicial relief." Andrews v. City of Philadelphia, 895 F.2d 1469, 1483 (3d Cir. 1990). In the TAC, Plaintiff states that he suffered mental stress and was "broken to the point of being forced to resign." (Doc. No. 22 ¶ 32.) Thus, Plaintiff has sufficiently pled the third element of the prima facie case.

Fourth, Plaintiff also has plausibly alleged that a reasonable person who is in the same protected class in his position would be detrimentally affected by the discrimination. The fourth element is an objective standard and "it is here that the finder of fact must actually determine

---

[6] As noted, Plaintiff alleges that he was repeatedly told, "If you don't like it here you can go back where you came from." (Doc. No. 22 at ¶ 27.) He also claims that he was ridiculed for his speech, was "made fun of for the jobs women in his culture engage in," and was the subject of jokes regarding his culture. (Id. ¶ 41.) Plaintiff further alleges that Officer Bannar made remarks to Plaintiff about wanting to go to a Chinatown massage parlor to "get a happy ending." (Id.)

whether the work environment is [racially] hostile." Andrews, 895 F.2d at 1483; see also Bryant v. Wilkes-Barre Hosp., Co., 146 F. Supp. 3d 628 (M.D. Pa. 2015) ( "Plaintiff also has produced sufficient evidence to show that the repeated comments and continual mocking by her co-workers made her more than simply upset [] and that this conduct would have detrimentally affected a reasonable person in like circumstances."). Plaintiff has plausibly alleged that the racial remarks and negative comments would detrimentally affect a reasonable person in his protected class.

Finally, Plaintiff has sufficiently pled that Radnor PD is vicariously liable for racially discriminatory acts. Under the fifth element, Plaintiff must allege a basis for respondeat superior liability. Andrews, 895 F.2d at 1482. Under the doctrine of respondeat superior, an employer may be liable for racially discriminatory acts by an employee who creates a hostile work environment. Faragher, 524 U.S. 775, 780 (1998). An employer will be liable for creation of a hostile work environment where the alleged harasser is a supervisor. The United States Supreme Court has stated that an employee is a "supervisor" when "the employer has empowered that employee to take tangible employment actions against the victim . . ." Vance v. Ball State Univ., 133 S. Ct. 2434, 2443 (2013) (quoting Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 744 (1998)). A "tangible employment action" includes "discharge, demotion, or undesired reassignment." Ellerth, 534 U.S. at 765.

Construing Plaintiff's Complaint liberally, it appears that Sergeant Stiansen, Lieutenant Block, and Sergeant Maguire are all supervisors of Plaintiff. Plaintiff specifically alleged that Sergeant Maguire began to ignore Plaintiff during roll call, preventing access to an overtime sheet. (Doc. No. 22 ¶ 33.) Plaintiff also alleges that he began to receive negative performance reports, which contained false information. (Id.) Additionally, Plaintiff alleges that Officer

Bannar, who is alleged to have subjected Plaintiff to many instances of racial discrimination, was assigned to train Plaintiff for twelve hours.  (Doc. No. 22.)  Further, Defendants have not alleged that any employees of the Radnor PD named in Plaintiff's Complaint were not Plaintiff's supervisors.  Because Plaintiff has fulfilled all of the elements of the prima facie case, his hostile work environment claim will not be dismissed at this juncture.

### C.  Plaintiff Has Not Plausibly Alleged a Retaliation Claim

Next, Plaintiff alleges that Defendants retaliated against him based on his race and national origin.  After Plaintiff informed his superior officer about racial profiling by other officers, Plaintiff was "talked down to," "yelled at," and given negative performance reviews.  (Doc. No. 22 ¶ 33.)  Defendants argue that Plaintiff's retaliation claim fails because the alleged retaliation was in response to Plaintiff's opposition to racial profiling of the public, which is not an activity protected by Title VII.  The Court agrees and will dismiss Plaintiff's retaliation claim.

Title VII makes it unlawful for an employer "to discriminate against any individual . . . because he has opposed any practice made an unlawful employment practice by this subchapter or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter."  42 U.S.C. § 2000e-3(a).  Thus, it is unlawful for an employer to take an adverse employment action against an employee who either opposes a discriminatory employment practice or files a complaint with the EEOC.  To successfully allege a claim of retaliation, Plaintiff must demonstrate that: (1) he engaged in protected activity, which means that he either opposed an employment practice or filed an EEOC charge; (2) he was subjected to contemporaneous or subsequent adverse action; and (3) there was a causal link between Plaintiff's protected activity and the adverse action.  Moore v. City of Phila., 461 F.3d 331, 341 (3d Cir. 2006) (quoting Nelson v. Upsala Coll., 51 F.3d 383, 386 (3d

15

Cir. 1995)).   Defendants challenge the "protected activity" and "causal link" elements of Plaintiff's prima facie retaliation case, and the Court will address only these elements.  (Doc. No. 24 at 10.)

First, Defendants allege that Plaintiff has failed to sufficiently plead the first element of a retaliation claim because he did not engage in a protected activity.  Indeed, "protected employee activity includes 'participat[ing] in certain Title VII proceedings' and 'oppos[ing] discrimination made unlawful by Title VII.'"   Tinio v. St. Joseph's Reg'l Med. Ctr., No. 15-2096, 2016 WL 1169121 at *2 (3d Cir. Mar. 25, 2016) (quoting Moore, 461 F.3d at 341).  "For an activity to be protected, the employee must hold an objectively reasonable and good faith belief that the activity they oppose is unlawful under Title VII."  Spangler v. City of Phila., 523 F. App'x 142, 146 (3d Cir. 2013) (quoting Moore, 461 F.3d at 341).

In Wimmer v. Suffolk County Police Department, the Second Circuit addressed a question of retaliation concerning a probationary police officer.  176 F.3d 125, 128 (2d Cir. 1999).  There, the plaintiff alleged that he was given poor performance reviews and eventually terminated after he reported police officers making racial slurs at black citizens and questioned one officer's traffic stops of Hispanic drivers without cause.  Id. at 134.  The court explained that, because the plaintiff's opposition "was not directed at an unlawful *employment practice* of his employer," the plaintiff's claim of retaliation was not cognizable under Title VII.  Id. at 135 (emphasis in original).

Here, Plaintiff alleges that he informed Officer Bannar and Sergeant Stiansen of various incidents of racial profiling, but instead of addressing his concerns, Defendants made it

impossible for Plaintiff to work.[7]   (Doc. No. 24 ¶ 32.)  However, none of Plaintiff's opposition activity implicated an employment practice made illegal by Title VII because Plaintiff opposed the racial profiling of citizens of Radnor, and not of employees of the Radnor PD.  See Rossell v. Cty. Bank, 270 F. App'x 217, 217 (3d Cir. 2008) (finding that a bank's treatment of black customers did not constitute a protected activity because treatment of customers is not covered by Title VII); Slaughter v. Cty. of Alleghany, No. 2:11–cv–00880, 2014 WL 3778318 at *5 (W.D. Pa. July 30, 2014) (following Wimmer and stating that "complaints about racially discriminatory actions by co-workers against non-employees are not 'protected activity' under Title VII").

With regard to third element of Plaintiff's retaliation claim, Defendants allege that he does not state a plausible claim because he has not established that there was a causal link between the protected activity and the adverse action.  Defendants maintain that the alleged retaliation and poor performance reviews were not in response to any protected activity.  (Doc. No. 24 at 10.)

Here, Plaintiff has not established that he engaged in a protected activity because, as previously stated, complaints regarding the treatment of non-employees are not protected by Title VII.  As such, Plaintiff has not demonstrated that a causal connection existed between his engagement in a protected activity and Defendants' adverse action.  For these reasons, Plaintiff's retaliation claim will be dismissed.

---

[7]  Specifically, Plaintiff alleges that shortly after he began working, he witnessed Sergeant Stiansen and other Radnor Police Officers engaging in racial profiling, and he reported this to Officer Bannar.  (Id. ¶ 18.)  Plaintiff also alleges that he expressed his concern to Officer Bannar that no property receipt was prepared for a Caucasian individual who was found in possession of unmarked narcotic bottles.  (Id. ¶¶ 22-23.)

**D.  Plaintiff Has Not Plausibly Alleged an Unfair Labor Practices Claim**

Finally, Defendants argue that Plaintiff's National Labor Relations Act of 1935 ("NLRA") claim fails because he has failed to set forth any basis for his claim and because the NLRA does not apply to public employers and employees.  (Doc. No. 24 at 11.)

The NLRA "does not cover public employers or their employees."  Plouffe v. Gambone, Civ. A. No. 11-6390, 2012 WL 2343381 at *6 (E.D. Pa. June 20, 2012) (citing 29 U.S.C. § 152(2)); Jackson v. Temple Univ., 721 F.2d 931, 933-34 (3d Cir. 1983).   In the TAC, Plaintiff states both that Radnor PD is a local government agency, and that he was employed as a Radnor Police Officer.  (Doc. No. 22 ¶¶ 2, 17.)  As such, Plaintiff is not an employee covered by the NLRA, and for this reason, the claim fails.

**V.    CONCLUSION**

For the foregoing reasons, Defendants' Motion to Dismiss (Doc. No. 24) will be granted in part and denied in part.   Plaintiff's retaliation and unfair labor practices claims will be dismissed and his discrimination and hostile work environment claims will not be dismissed.

An appropriate Order follows.